# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1831, AT CAMBRIDGE.

---

PRESENT.

HON. LEMUEL SHAW, CHIEF JUSTICE,
HON. SAMUEL PUTNAM,
HON. SAMUEL S. WILDE, } JUSTICES.
HON. MARCUS MORTON,

---

## The Inhabitants of EAST SUDBURY *versus* SUDBURY.

A person does not acquire a legal settlement by residing in a town ten years together and paying taxes there for any five of those ten years, if within that time he is committed to gaol, and while there applies for and receives relief as a pauper, from the gaoler.

Where a pauper, whose legal settlement was in the town of S. was relieved by the overseers of the poor of the town of C., and upon notice the expenses were reimbursed by the overseers of the poor of the town of E. S., upon the supposition that his legal settlement was in E. S., it was *held*, that the town of E. S. could not maintain an action for repayment against the town of S.

A notice by the overseers of the poor of one town to those of another, that a person has become chargeable as a pauper, given within three months after the expenses were paid, but not within three months after they were incurred, is insufficient.

ASSUMPSIT to recover payment for supplies furnished for the support of Levi Maynard, his wife and children.

Upon the trial, before *Morton* J., it appeared that previously to April 8, 1818, Maynard had his legal settlement in the town of Sudbury. On that day he removed, with his family, from Sudbury to East Sudbury, and there continued to reside till April 18, 1828. Taxes were assessed upon him

in East Sudbury in 1818 and in the eight following years, all which he paid. On May 19, 1818, he was committed to gaol in Concord, on execution for debt, and continued in gaol till the 16th of June following, his family remaining in East Sudbury. On the day of his commitment he was admitted to the liberty of the yard. While in gaol he boarded with the gaoler and worked for him, but whether on account of his regular board or for some extra accommodations, was a question upon which there was contradictory evidence. A notice of his intention to take the poor debtor's oath was served upon the creditor, but he did not take the oath, having been discharged by the creditor, upon his giving a note for the amount of the execution. The gaoler represented to the overseers of the poor of Concord, soon after the commitment, that Maynard was in gaol, and that he was poor and in need of assistance ; but it did not appear that Maynard requested the gaoler to make this representation. The overseers of the poor of Concord thereupon wrote to the overseers of the poor of Sudbury, giving them notice of this representation and requesting them to pay for Maynard's support. About a year afterwards, the overseers of Sudbury paid the gaoler, on an account which he exhibited against the town of Sudbury, the sum of $10·42 for Maynard's board while in gaol.

Part of the supplies for which this action was brought, to wit, to the amount of $73·45, was furnished by the town of Concord, where Maynard and his family fell into distress and stood in need of assistance, in October 1828, which sum was paid by the plaintiffs, upon notice to them by the town of Concord, on the supposition that Maynard's legal settlement was in East Sudbury. Maynard and his family were soon after removed into East Sudbury, and the residue of the supplies for which this action was brought, to wit, to the amount of $32·46, was furnished by East Sudbury. The notice from the overseers of East Sudbury to those of Sudbury, was given within three months from the time of payment by them to the town of Concord.

The jury were instructed, that if Maynard did stand in need of relief and support as a pauper, and as such was relieved and supported by the gaoler upon his application or

request, and if he did not pay the gaoler therefor, then his residence in gaol was an interruption of his legal residence in East Sudbury, and their verdict should be for the plaintiffs for the whole amount claimed ; otherwise for the defendants.

The jury returned a verdict for the plaintiffs for the whole sum.

If the whole Court should be of opinion that the instruction as to the interruption of Maynard's legal residence in East Sudbury was wrong in point of law, the plaintiffs were to become nonsuit. If the pauper's legal settlement was in Sudbury, but the plaintiffs were not entitled to recover for the sum of $ 73·48 paid to the town of Concord, the verdict was to be amended and judgment to be rendered for the supplies furnished by the town of East Sudbury only.

*Stearns* and *Fiske*, for the defendants. Maynard gained a settlement in East Sudbury. His residence at Concord in 1818 was involuntary; accidental and temporary, and cannot affect his settlement. The plaintiffs cannot take advantage of the transactions there, being neither a party nor privy to them ; in which this case differs materially from *East Sudbury* v. *Waltham*, 13 Mass. R. 460. *Braintree* v. *Hingham*, 17 Mass. R. 432.

If the pauper's settlement is in Sudbury, the plaintiffs can not recover the sum of $73.48, the expenses to that amount having been incurred more than three months next before notice given to the defendants, and the relief having been furnished by the town of Concord and not by the plaintiffs.

*Hoar* and *S. H. Mann*, *contrà*, cited, in answer to the last remark, *Marlborough* v. *Rutland*, 11 Mass. R. 483.

Shaw C. J. delivered the opinion of the Court. The principal question in this case is, whether the pauper, Levi Maynard, had his legal settlement in the defendant town. It is conceded that he once had his legal settlement in that town ; and such settlement still remains, unless he has acquired one elsewhere. It is contended by the defendants, that he acquired a settlement in East Sudbury in the 12th mode provided by *St.* 1793, *c.* 34, § 2, by a residence of ten years, paying taxes five years out of that term.[1]

East Sudbury
*v.*
Sudbury.

*Oct. 18th.*

*Oct. 20th*

---

[1] See Rev. Stat. *c.* 45, § 1.

Here the facts show, that Maynard resided in East Sudbury from April 8, 1818, to April 18, 1828, being in fact more than ten years, and that during that period he paid taxes more than five years. It further appears that from May 19th to June 16th 1818, the pauper was confined in the limits of the prison at Concord, being committed on an execution for debt ; which period of 28 days, if deducted from the whole period of the pauper's residence in East Sudbury, will reduce it to a period less than ten years. The question therefore is, whether, whilst a person is actually receiving assistance as a pauper, in a town other than that which is chargeable with his support, he can be said to have a residence, within the true meaning of the statute.

This statute has received a judicial construction in the case of *East Sudbury* v. *Waltham*, 13 Mass. R. 462, precisely applicable to this question. It is there held, that a residence within the meaning of the statute, is not a merely personal residence or domicile in a town, under any and all circumstances. Whilst a person is actually supported as a pauper, by a town, liable to his support, although resident in another town, he cannot at the same period be deemed to have such residence there, as, if continued for ten years, would give him a settlement. This the Court are of opinion is the sound and true construction of the statute ; and were it otherwise, a person might be living as a pauper, at the expense of one town, and at the same time be acquiring a settlement in another.[2]

This principle is decisive of the present case. During the period that Maynard was in gaol at Concord in 1818, he was relieved, either by that town or by the gaoler. The town of Sudbury were then liable for his support, and upon application did reimburse the sum so paid, as they were bound to do. During that period therefore he was supported by the defendants as a pauper. The time indeed was short, but being deducted from the term of his alleged residence in the plaintiff town, will reduce the time below ten years, and of course prevent his acquiring a settlement in that town by residence.[1]

---

[2] *Brewster* v. *Dennis*, 21 Pick. 233.

[1] See *Wiscasset* v. *Waldoborough*, 3 Greenl. 388 ; *Windsor* v. *China*, 4 Greenl. 298 ; *Corinna* v. *Exeter*, 1 Shepl. 321 ; *Standish* v. *Windham*, 1 Fairf

2. **The** other point presented by the report, upon the question of damages, is one of more difficulty. The facts upon this part of the case are, that a part of the supplies for which this action was brought, were furnished to Maynard and his family, after the expiration of the ten years, in October 1828. This sum was paid by East Sudbury to Concord, upon notice and demand, under a supposition at the time, that the settlement of the pauper was in East Sudbury. Notice was given by East Sudbury to Sudbury, within three months from the time that the money was paid by the former to Concord ; but not, as we are to infer from the argument, within three months from the time that the relief was given by the latter town to the paupers.

The question is, whether East Sudbury by paying to the town of Concord, although under a belief that the former was liable for the support of the pauper, when in fact he had not his legal settlement in that town, can maintain an action against the town of his settlement. It would certainly be attended with great inconvenience if such were the law. It would lead to circuity of action and increased litigation. It would encourage laxity, negligence and delay among overseers, in ascertaining the settlement of paupers, where great vigilance, activity and promptness are of the first public importance. Still the question depends mainly, if not wholly, upon the construction of the statute.[2]  *St.* 1793, *c.* 59, § 9.

East Sudbury
*v*
Sudbury.

---

97. A person does not acquire a settlement in a town, in such mode, if he receives aid as a pauper from the town before the expiration of the ten years, although he has no settlement in the Commonwealth. *West Newbury* v. *Bradford,* 3 Metc. 428. But a person will not be prevented from gaining a settlement in a town, in this mode, by the circumstance, that his wife was, at the same time, supported as a pauper, by another town in which she resided, it not appearing, that she was so supported with his knowledge, or that he was ever applied to for payment of the expenses thereof, or was unable to pay them. *Berkeley* v. *Taunton,* 19 Pick. 480 ; *Raymond* v. *Harrison,* 2 Fairf. 190 ; *Hallowell* v. *Saco,* 5 Greenl. 143 ; *Norwich* v. *Saybrook,* 5 Connect. R. 384. In order to gain a settlement in this mode, a person must *pay all* the taxes assessed upon him for the five years ; it is not sufficient if he pay a part only, and is discharged by a vote of the town from the payment of the residue. *Shrewsbury* v. *Salem,* 19 Pick. 389. In regard to the evidence of the assessment or payment of taxes, see *Robbins* v. *Townsend,* 20 Pick. 345 ; *Attleborough* v. *Middleborough,* 10 Pick. 378.

  [2] See Rev. St. *c.* 46, § 13.

1 *

East Sud-
bury
*v.*
Sudbury.

The objection is two-fold : —

1. Because the defendant town cannot be liable to the plain tiff town, for the relief of a person, though a settled inhabitant of the former, unless he comes within the description of " persons residing or found therein, not belonging thereto, but having lawful settlements in other towns or districts, when they fall into distress and stand in need of immediate relief."

2. Because the inhabitants of a town are liable only for expenses incurred within three months next before notice given to the town.

One general observation may be made in regard to the lia bility of towns for the support of paupers, which is, that towns as such are under no natural or moral obligation to provide relief for the poor ; that the duty is of mere positive obligation, created and charged upon them by the statute ; and that the nature and extent of such obligation are limited and controlled by the statute, and by the provisions of those statutes by which actions and other remedies against towns are given.[1]

In regard to the first ground of objection, the statute provides only, that towns shall afford immediate relief to persons found and residing therein, having lawful settlements in other towns ; the expenses whereof, incurred within three months next before notice, may be sued for and recovered by the town incurring the same, against the town where the pauper had his settlement. In the present case no such expense was incurred by the plaintiff town. Maynard did not fall into distress there, and therefore they were not bound to provide for him on that ground ; nor had he his settlement therein, and therefore they were not liable to reimburse those who had relieved his necessities in Concord. The circumstance that they believed themselves liable and paid under such belief, can make no difference, as it does not bring the case within the letter or spirit of the statute, by force of which alone an action can be maintained against a town.

The case of *Marlborough* v. *Rutland*, 11 Mass. R. 483, cited for the plaintiffs, is quite distinguishable. There indeed

---

[1] See *Houghton* v. *Danville*, 10 Vermont R. 537; *Castleton* v *Minor*, 8 Vermont R. 209; *Aldrich* v. *Londonderry*, 5 Vermont R. 441.

the pauper first became chargeable to Marlborough whilst residing in Spencer, and Marlborough paid Spencer the expense thus incurred.　But the paupers were afterwards removed to Marlborough, and were supported there, and afterwards at the expense of Marlborough they were supported in Spencer.　Had Marlborough recovered of Rutland any part of the sum paid by the former to Spencer, it would have been an authority for the present case.　But this was not attempted. The paupers were actually supported as such in Marlborough, before they were placed at board in the town of Spencer, and so were chargeable to that town, as being therein and in actual distress.　The only point ruled in that case was, that a town actually chargeable by force of the statute, may furnish the relief in another town, without impairing their remedy over. This does not touch the present case.[2]

2. Upon the other part of the statute we are of opinion, that the notice to be given, is notice of the expenses incurred for relief given within three months from the time that such relief is given, and not three months after the time of payment for supplies afforded at an anterior period ; otherwise, the beneficial intent of the statute, that the town ultimately liable shall have early notice of their liability, would be defeated.[1]

On both grounds therefore the Court are of opinion, that the plaintiffs cannot recover for that portion of their demand consisting of the money paid to Concord, and therefore that the verdict is to be reduced by deducting the sum of $73·48, and that judgment be entered on the verdict as thus amended.

East Sud-
bury
v.
Sudbury.

---

[2] See *Worcester* v. *Milford*, 18 Pick. 383.
[1] See Rev. Stat. c. 46, § 13; *Camden* v. *Lincolnville*, 4 Shepl. 384.

### REMEMBER PRESTON *versus* THE CITY OF BOSTON

A person liable to be taxed in one town for his poll and personal estate, cannot legally be assessed for the same in another town ; and if so assessed, even with his own consent, still he cannot be compelled to pay the tax.

If a person owning real estate in a town in which he does not reside, is assessed by the assessors of such town as well for his poll and personal property, as for his real estate, his remedy against the illegal tax on his poll and personal property is not merely by appeal as for an over-taxation, but in case he is compelled to pay the same, he may recover back the money in an action of assumpsit against the town.

If a person pays an illegal tax in order to prevent the issuing of a warrant of distress with which he is threatened, and which must issue of course unless the tax is paid, the payment is to be deemed compulsory and not voluntary.

ASSUMPSIT to recover $711·50, money had and received to the use of the plaintiff, being the amount of a tax assessed upon him for the year 1828, for his poll and personal estate, and by him paid to the treasurer and collector of the city of Boston.

At the trial, before *Wilde* J., it was proved that the plaintiff, with his wife, had lived at board in Medford several years, and had been taxed there four years preceding 1828, and also that year, and that on the 1st of May 1828 one of the assessors of Medford saw him there, at the house of his son-in-law, with whom he and his wife were then boarders. The plaintiff was usually in Boston some days every three or four weeks, where his principal business was the taking care of his property, consisting chiefly of public stocks and money, and on those occasions he boarded with a son-in-law who resided there , and the early part of the month of May 1828 the plaintiff passed in Boston.

It was not questioned on the part of the defendants, that the plaintiff had his residence in Medford and was liable to be taxed there in the year 1828. The defence set up was, that he had requested the assessors of Boston to tax him there, by the following note . addressed . to them. " Boston, Gouch Street, May 1828. You will please to be informed that I am a boarder at my son's, E. D. Clarke, and you are requested to assess me this year, a light tax for personal estate ; trusting in your prudence and moderation, it is my wish in future to pay a light tax to this city."

8

The plaintiff was the owner of real estate in Boston, for which he admitted that he was regularly taxed in 1828. The taxes of that year were committed to Mackay, the treasurer and collector, on the 1st of November, and he soon gave notice to the plaintiff of his being taxed in Boston, and of the amount of his tax, with the time when payment would be required. On the 20th of December 1828 the plaintiff called upon Mackay, paid the tax on his real estate, and then objected to the tax on his poll and personal estate, as being an illegal assessment, saying that he was taxed wrongfully, that he had been taxed in Medford for his poll and personal estate for 1828, and had already paid his taxes there. Mackay replied, that if he did not pay at the time limited, a warrant of distress must be issued against him, unless he obtained an abatement. The plaintiff thereupon petitioned the mayor and aldermen of the city for an abatement of his tax, which being refused, he paid the amount to Mackay on the 17th of January 1829.

Upon these facts such judgment was to be rendered, upon nonsuit or default, as the whole Court should direct.

*Stearns* and *A. Bartlett*, for the plaintiff, contended that the tax in question was illegal ; *Richards* v. *Dagget*, 4 Mass. R. 539 ; that the consent of the plaintiff to be taxed, could not avail the defendants ; *Pease* v. *Whitney*, 8 Mass. R. 93 ; *Dillingham* v. *Snow*, 5 Mass. R. 547 ; that the money might be recovered back, as having been paid by compulsion and through the mistake of the assessors ; *Astley* v. *Reynolds*, 2 Str. 916 ; *Bize* v. *Dickason*, 1 T. R. 287 ; *Buller* v. *Harrison*, Cowp. 565 ; *Libby* v. *Burnham*, 15 Mass. R. 148 ; 1 Dane's Abr. 180, c. 9, art. 7 ; ibid. 183, c. 9, art. 10, § 3 ; *Newdigate* v. *Davy*, 1 Ld. Raym. 742 ; and that the plaintiff's remedy was an action of assumpsit. *Sumner* v. *First Parish in Dorchester*, 4 Pick. 361 ; *Inglee* v. *Bosworth*, 5 Pick. 503 ; *Amesbury W. & C. Manuf. Co.* v. *Amesbury*, 17 Mass. R. 461 ; *St.* 1823, c. 138, § 5.

*J. Pickering*, (City Solicitor,) for the defendants. The whole property, real and personal, for which the plaintiff was assessed in Boston, is to be considered as an integral estate, so that the plaintiff has merely been over-taxed, and his only

remedy was an application to the mayor and aldermen for an abatement. *St.*, 1821, *c.* 109, § 8, 11 ; *Osborn* v. *Danvers*, 6 Pick. 98 ; *Little* v. *Greenleaf*, 7 Mass. R. 240. That course has been pursued, and the mayor and aldermen have made a decision against the plaintiff upon the merits. If they had jurisdiction, their decision is final. That they had jurisdiction in regard to the real estate, will not be denied ; and the defendants contend that they had jurisdiction in regard to the personal ; for it must be inferred from the plaintiff's letter, that he had personal property in Boston liable to be there taxed, as stock in trade, &c. otherwise he must have intended to evade taxation at Medford, and the Court will not presume a fraud. *Gray* v. *Kettell*, 12 Mass. R. 161.

